E-FILED
Wednesday, 21 October, 2026 09:55:39 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ELLEAN NANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:26-cv-01099-SEM-DJQ |
| | ) | |
| LATOYA HUGHES, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Plaintiff, proceeding pro se and presently incarcerated at Illinois River Correctional Center, alleges Defendants violated his Eighth Amendment rights through deliberate indifference to his serious medical needs, specifically failing to keep his prescriptions filled. Plaintiff proceeds in forma pauperis. The case is now before the Court on several issues.

### I. Merit Review

The Court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim

upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff names as Defendants IDOC Director Latoya Hughes, Warden Chance Jones, Doe Health Care Unit Administrator, Doe Director of Nurses, Doe Health Care Unit Pharmacist, and prison healthcare contractor Wexford Health Sources, Inc.

Plaintiff is prescribed several daily medications, including 1) psychotropic medications, 2) blood pressure medications, 3) hepatitis B medication, and 4) back pain medication. Plaintiff alleges failures to provide him with timely refills of these medications as prescribed. The exact dates and lengths of time Plaintiff went without refills is muddled, but the pleadings plausibly indicate that the refills were not timely effected and that the medical Defendants were aware of the issues but did not fix them.

As a result, Plaintiff alleges that he suffered 1) severe anxiety attacks, compulsive self-injurious behavior including clawing his skin until he bled from his neck, arms, chest, and legs; 2) further liver damage, progression of fibrosis, and worsening cirrhosis; 3) repeated high blood pressure readings, severe headaches, and increased risk and progression of renal damage; and 4) prolonged and unnecessary physical pain.

Plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Wexford, the Health Care Unit Administrator, the Director of Nursing, and the Pharmacist, and Warden Jones solely in his official capacity to effect any injunctive relief ordered later in the case. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (stating that the standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations as well).

Plaintiff has plausibly alleged that these individual and corporate Defendants knew Plaintiff was not provided with his medication as prescribed, on a repeated basis, for an extended

period, causing him significant injuries. Plaintiff repeatedly sent letters and grievances flagging the issue, from the start, to which he received responses that acknowledged the issue. It is plausible that these Defendants were aware of and exhibited deliberate indifference to Plaintiff's medication refill issues.

Plaintiff does not state a plausible claim for relief as to Defendants Warden Jones and Director Hughes. The records attached to the Complaint indicate that Jones deemed several of Plaintiff's grievances to be an emergency and directed that Plaintiff's issues be prioritized. These high level administrators were entitled to rely on medical staff to do the work that was within their purview, and simply writing letters and grievances complaining about a problem is not enough, in itself, to draw such administrators within the ambit of an individual capacity lawsuit. *See Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) ("[I]n order to hold an individual defendant liable under § 1983 for a violation of an inmate's constitutional rights, the inmate must show that the defendant was personally responsible for that violation."). Again, as Plaintiff seeks injunctive relief, it is appropriate to maintain Jones

as a Defendant solely in his official capacity as Warden and solely in order to effect any injunctive relief ordered.

**II. Injunctive Relief**

Plaintiff requests an injunction requiring prison officials to1) immediately designate his prescriptions “keep on person” (as opposed to “watch take” as they are currently designated), 2) immediately provide all prescriptions without interruption, 3) ensure uninterrupted Vemlidy treatment for hepatitis B, 4) monitor and treat Plaintiff’s hypertension and kidney function, 5) implement safeguards to prevent future medication lapses, 6) provide regular medical evaluations by qualified providers, and 7) that the Court retain jurisdiction to enforce compliance. Motion for Preliminary Injunction, Dkt. 3.

Plaintiff relies upon his Complaint and the attached documents including letters, grievances, and statements by other prisoners about their experiences with delayed prescription refills. His complaint is not verified and he does not provide an affidavit attesting to his allegations.

The Prisoner Litigation Reform Act (PLRA) limits the scope of the Court’s authority to enter an injunction in the corrections

context. *Westefer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer,* 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage.") (internal quotation marks and citation omitted).

A court may issue a temporary restraining order "without written or oral notice to the adverse party or its attorney" only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Plaintiff's motion for injunctive relief is denied without prejudice because 1) it is unsupported by admissible evidence, 2) several items of requested relief are beyond the scope of this

lawsuit, which is focused on prescription refills rather than broader issues of medical assessments and treatment, and 3) without a compelling record before it, the Court must refrain from entering an order specifying how prison officials should address specific issues or problems. *Rasho v. Jeffreys*, 22 F.4th 703, 712-13 (7th Cir. 2022) (injunction that defined how prison officials should address a particular problem violated the PLRA's least-intrusive-means requirement).

The Court, however, is not insensitive to Plaintiff's complaints. To ensure that prison officials are aware of Plaintiff's concerns and to mitigate any issues related to Plaintiff's prescription refills, the Court will direct the Clerk to forward a copy of the Complaint and this Order to the Warden at Illinois River Correctional Center. **As a courtesy to the Court, the Warden is requested to take all available measures to ensure that the healthcare staff makes every effort to always refill Plaintiff's prescription medication before Plaintiff runs out of doses of medication, to avoid any ongoing harm to Plaintiff.**

**III. Request for Counsel**

The Seventh Circuit has summarized the legal standard as follows:

> Under 28 U.S.C. § 1915(e)(1), a federal court "may request an attorney to represent any person unable to afford counsel." The statute is "entirely permissive." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Civil litigants have no constitutional or statutory right to court-appointed counsel, and § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel." *Id.* at 653 (quoting *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)). Rather, the statute "codifies the court's discretionary authority to recruit a lawyer to represent an indigent civil litigant *pro bono publico*." *Id.*
>
> "Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). "District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Id.*
>
> Accordingly, we have recently explained that "the decision whether to recruit a lawyer for a particular plaintiff is made against the twofold backdrop of a high volume of indigent, pro se litigants (particularly incarcerated individuals) and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono." *Watts v. Kidman*, 42 F.4th 755, 763 (7th Cir. 2022). Based on these and other practical considerations, we have held that district judges should engage in a two-step inquiry when faced with a request for pro bono counsel under § 1915(e)(1), asking first "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty

> of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654.
>
> The first step needs no elaboration. Step two "can be complex" and involves a pragmatic judgment about the difficulty of the case and the plaintiff's ability to present it to the court on his own. *Watts*, 42 F.4th at 760. "The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Pruitt*, 503 F.3d at 655. A judge will normally consider "the plaintiff's literacy, communication skills, educational level, and litigation experience" along with any evidence in the record "bearing on the plaintiff's intellectual capacity and psychological history." *Id.* But these are merely factors that are ordinarily relevant. No one factor is "necessary or conclusive." *Id.* at 655 n.9. Indeed, "[t]here are no fixed requirements for determining a plaintiff's competence to litigate his own case." *Id.* at 655. Ultimately, the "inquiry into the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id.*
>
> Finally, "the decision whether to recruit pro bono counsel is left to the district court's discretion." *Id.* at 654. Our job is to ensure that this discretion is exercised in accordance with appropriate legal principles. The "question on appellate review is not whether we would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Id.* at 658.

*Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024).

Here, first, Plaintiff has shown a reasonable attempt to obtain counsel on his own, having written to several attorneys asking for assistance, without success.

As to the second inquiry, Plaintiff's claims are not factually difficult; he alleges issues in receiving timely prescription refills. He has personal knowledge of his claims and can testify to that. Written discovery should produce relevant records related to Plaintiff's claims. Though certain incarcerated or formerly incarcerated witnesses may be difficult to contact, this issue is not unique to Plaintiff's case, and Plaintiff will have the opportunity to request trial subpoenas if the case progresses to that stage. Plaintiff's claims are also not particularly legally difficult, though all federal litigation is difficult to a degree. Plaintiff's pleadings are clear, legible, and coherent. Plaintiff's education level is not before the Court, but he appears well able to communicate. Plaintiff points out his mental health issues, but there is no information before the Court that indicates Plaintiff is mentally impaired to the extent that he cannot represent himself at this stage of the case. Plaintiff has extensive litigation experience in federal court in all Districts of this state, having prosecuted cases pro se as well as with the assistance

of several law firms. His pleadings are representative of an individual who is better prepared than many to represent himself.

Plaintiff is represented by pro bono counsel in several other federal cases. Perhaps one of those firms will be willing to take on this case, if Plaintiff asks them.

**IT IS THEREFORE ORDERED:**

**1. Motion for Preliminary Injunction [3] is DENIED. However, as a courtesy to the Court, the Warden is requested to take all available measures to ensure that the healthcare staff makes every effort to always refill Plaintiff's prescription medication before Plaintiff runs out of doses of medication, to avoid any ongoing harm to Plaintiff.**

**2. Motion to Request Counsel [6] is DENIED.**

**3. Motion for Default [9] is DENIED.**

**4. Motions for Status [10], [11] are DENIED.**

**5. The Clerk is to provide a copy of this Order to the Warden at Illinois River to ensure that individual is aware of Plaintiff's allegations and takes all available steps to be sure Plaintiff's prescriptions are timely refilled.**

**6. Plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Wexford, the Health Care Unit Administrator, the Director of Nursing, and the Pharmacist, and Warden Jones solely in his official capacity to effect any injunctive relief ordered later in the case. Additional claims shall not be included in the case, except at the court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15. Hughes to be terminated.**

**7. This case is now in the process of service. The plaintiff must wait until counsel has appeared for the defendants before filing motions, so defendants receive notice and an opportunity to respond. Motions filed before defendants' counsel files an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.**

**8. The court will attempt service on the defendants by mailing each defendant a waiver of service. The defendants have 60 days from the date the waiver is sent to file an answer. If the defendants have not filed answers or appeared through counsel within 90 days of the entry of this order, the plaintiff may file a motion requesting the status of service. After the defendants have been served, the court will enter an order setting discovery and dispositive motion deadlines.**

**9. As to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.**

**10. The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth the defendants' positions. The court does not rule on the merits of those positions unless and until a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be considered.**

**11. This district uses electronic filing. After defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other**

**paper filed by the plaintiff with the clerk. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed with the clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the clerk. The plaintiff must mail his discovery requests and responses directly to defendants' counsel. Discovery requests or responses sent to the clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the court has entered a scheduling order, which will explain the discovery process in more detail.**

**12. Counsel for the defendants is hereby granted leave to depose the plaintiff at his place of confinement. Counsel for the defendants shall arrange the time for the deposition.**

**13. The plaintiff shall immediately notify the court, in writing, of any change in his mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.**

**14. If a defendant fails to sign and return a waiver of service to the clerk within thirty days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

**15. The clerk is to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

Entered October 21, 2026.

*s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE